OPINION
{¶ 1} This is an appeal by plaintiff-appellant, Ann H. Womer Benjamin ("appellant" or "the Liquidator"), Superintendent of the Ohio Department of Insurance, in her capacity as Liquidator of Credit General Insurance Company ("CGIC") and Credit General Indemnity Company ("CGIND"). The Liquidator appeals from a decision and entry of the Franklin County Court of Common Pleas in which that court granted the motions to dismiss, pursuant to Civ.R. 12(B)(2), filed by defendants-appellees, KPMG Barbados and KPMG Bermuda (collectively, "appellees"), two partnerships domiciled in Barbados and Bermuda, British Virgin Islands, respectively. Specifically, the court granted the motions to dismiss because it found that it lacked personal jurisdiction over appellees, which are accounting firms that provided auditing services to several foreign reinsurance companies that had insured some of CGIC and CGIND's risks.
 {¶ 2} Appellant filed her complaint on December 11, 2002, and therein alleges that CGIC and CGIND are insurance companies domiciled in Ohio and are wholly owned by PRS Insurance Group, Inc. ("PRS Group"), a holding company whose principal place of business is located in Beachwood, Ohio. The complaint further alleges that PRS Group wholly or partially owns three Barbados-domiciled reinsurers and one Barbadosbased insurance holding company (collectively, "the offshore affiliates") with which CGIC and CGIND entered into reinsurance agreements. Pursuant to those agreements, CGIC and CGIND ceded the risks of underlying insurance policies to the offshore affiliates in exchange for premiums paid.
 {¶ 3} According to the complaint, the reinsurance agreements required that the offshore affiliates post collateral the value of which was at least equal to the risks for which they were obligated under the reinsurance agreements, so that CGIC and CGIND could take the reinsurance credit on their financial statements without having to increase their own loss reserves. In paragraph 17 of the complaint, the Liquidator alleges that the offshore affiliates retained appellees to audit each of their financial statements. Both appellees prepared audited financials for each of the offshore affiliates, and KPMG Barbados principals signed and issued the same for the calendar years 1995, 1996, 1997 and 1998. The Liquidator alleges that, throughout the auditing process, appellees exchanged many pieces of correspondence with PRS Group officials located in Beachwood, Ohio, and that appellees sent copies of virtually all audit-related correspondence to a PRS Group representative in Ohio.
 {¶ 4} According to the complaint, the offshore affiliates were insolvent by December 31, 1998, and possibly earlier, but that CGIC and CGIND were unaware of the problem because the offshore affiliates had forwarded to CGIC and CGIND copies of the KPMG-audited financials. The Liquidator alleges that CGIC and CGIND reasonably relied on the audited financials and that appellees "were aware and it was specifically foreseen by them" that the audits were being performed for the benefit of, inter alia, CGIC and CGIND, and that the offshore affiliates would supply copies of the financials to those entities for their use, including filing copies thereof with the Ohio Department of Insurance.
 {¶ 5} The Liquidator alleges that appellees owed a duty of reasonable care in the preparation and certification of the offshore affiliates' audited financials, not just to the offshore affiliates themselves, but to CGIC and CGIND as well, and that appellees breached this duty in preparing and certifying inaccurate and false financial statements. She further alleges that had CGIC and CGIND earlier been made aware of the insolvency of the offshore affiliates, these Ohio insurance companies could have increased their loss reserves or sought and obtained reinsurance from solvent reinsurers, but, instead, as a direct and proximate result of appellees' negligence, CGIC and CGIND have been damaged by the non-payment by the offshore affiliates of reinsurance claims due to those entities' insolvency and eventual bankruptcy.
 {¶ 6} On February 25, 2003, KPMG Bermuda filed its motion to dismiss, arguing the dual grounds of lack of personal jurisdiction, pursuant to Civ.R. 12(B)(2), and failure to state a claim for relief, pursuant to Civ.R. 12(B)(6). KPMG Bermuda attached to its motion the affidavit of Robert D. Steinhoff, who identified himself therein as the Senior and Managing partner at KPMG Bermuda.
 {¶ 7} KPMG Bermuda argued that it had not engaged in activity that could be deemed "transacting business" in Ohio, as that term is used in R.C. 2307.382(A)(1), Ohio's long-arm statute. It further argued that the exercise of jurisdiction over KPMG Bermuda would offend traditional notions of fair play and justice because of the absence of the "minimum contacts" necessary to pass muster under the Due Process Clause of theFourteenth Amendment to the United States Constitution. According to KPMG Bermuda, it did not "purposely avail itself" of the privilege of conducting activities in Ohio and it was not reasonably foreseeable to KPMG Bermuda that its auditing services provided in Bermuda to Barbados-based entities would subject it to the jurisdiction of Ohio courts.
 {¶ 8} For her response to KPMG Bermuda's motion, the Liquidator relied primarily upon the affidavit of Kathleen McCain, an attorney retained by the Ohio Department of Insurance to assist with its pre-liquidation efforts to supervise and rehabilitate CGIC and CGIND. Ms. McCain averred that she has continued rendering her services during the liquidation of these two entities, and has served as the custodian of the records thereof since the beginning of the liquidation. Attached to Ms. McCain's affidavit were over 250 pages of documents that Ms. McCain averred are records of CGIC and CGIND. Ms. McCain detailed, in her affidavit, the nature and content of each such record.
 {¶ 9} The Liquidator argued that the materials attached to the McCain affidavit prove that KPMG Bermuda had substantial, purposeful contacts with the State of Ohio. Relying on the McCain documents, she argued that KPMG Bermuda sent at least 25 pieces of correspondence directly to persons in Ohio, and communicated by telephone with persons in Ohio. Also relying on the attachments to the McCain affidavit, the Liquidator argued that KPMG Bermuda personnel knew that CGIC and CGIND were closely integrated with the other PRS-owned entities, including the offshore reinsurers it had been engaged to audit, and also knew that CGIC and CGIND were "[d]ependant [sic]" upon these offshore reinsurers.
 {¶ 10} In its reply memorandum, KPMG Bermuda argued that all of the records attached to the McCain affidavit are inadmissible hearsay and cannot be admitted under the "business records exception" to the hearsay rule, which exception is found at Evid.R. 803(6). It also argued that, with or without the documents attached to the McCain affidavit, the Liquidator had not made out a prima facie case that the court could properly exercise jurisdiction over it.
 {¶ 11} On June 19, 2003, KPMG Barbados filed its own motion to dismiss. It, too, argued both that the trial court lacked jurisdiction over its person, pursuant to Civ.R. 12(B)(2), and that the complaint failed to state a claim for relief, pursuant to Civ.R. 12(B)(6). KPMG Barbados attached to its motion the affidavit of Jeffrey Gellineau, who identified himself therein as the managing partner of KPMG Barbados.
 {¶ 12} KPMG Barbados argued that there is no basis for Ohio courts to exercise jurisdiction over it pursuant to either Ohio's long-arm statute or Civ.R. 4.3(A). It further argued that the exercise of jurisdiction over it would violate the Due Process clause of the Fourteenth Amendment because it not only has not purposely availed itself of the privilege of conducting activities in Ohio, but it has not conducted any activities whatsoever in Ohio. It also argued that it was not reasonably foreseeable to KPMG Barbados that its auditing services provided in Barbados to the offshore affiliates, in connection with which there was no communication with or travel to Ohio, would subject it to the jurisdiction of Ohio courts.
 {¶ 13} In response, the Liquidator once again relied exclusively upon the documents attached to the McCain affidavit to argue that KPMG Bermuda personnel had substantial, purposeful contacts with PRS Group management in Ohio such that she could make out a prima facie case for the exercise of jurisdiction, both under Ohio's longarm statute and under Due Process principles. As with her opposition to KPMG Bermuda, the Liquidator sought to demonstrate, with the McCain affidavit and attachments, that KPMG Barbados knew that CGIC and CGIND were so closely related to the offshore entities being audited that CGIC and CGIND depended upon the results of the audit for their solvency and viability.
 {¶ 14} On November 25, 2003, the trial court issued a decision and entry that, inter alia, granted the motions to dismiss of both KPMG Bermuda and KPMG Barbados. First, the court ruled that the documents attached to the McCain affidavit were inadmissible hearsay and that they do not qualify for the exception for authenticated business records contained in Evid.R. 803(6). Specifically, the court found that appellant had failed to lay a proper foundation for the admissibility of the documents because Ms. McCain testified only to having reviewed the records. The court found that this did not show that Ms. McCain possessed personal knowledge of all of the foundational requisites of Evid.R. 803(6).
 {¶ 15} The court found that the Liquidator had failed to make out a prima facie case for the exercise of jurisdiction over either defendant under both the Ohio long-arm statute and under federal Due Process standards. Accordingly, the court granted the motions to dismiss. This appeal timely followed, and the Liquidator assigns two errors for our review:
1. The trial court erred in concluding it could not properly exercise personal jurisdiction over KPMG Bermuda.
2. The trial court erred in concluding it could not properly exercise personal jurisdiction over KPMG Barbados.
 {¶ 16} Before proceeding to our discussion of the assignments of error, we must resolve the preliminary issue, fully briefed by the parties though not separately assigned as error, whether the trial court abused its discretion in excluding from the record the McCain affidavit and the documents attached thereto.
 {¶ 17} Appellant argues that the trial court abused its discretion in excluding the affidavit and its attachments pursuant to Evid.R. 803(6) because there is no support in the text of Civ.R. 12(B)(2) for excluding hearsay evidence in passing upon a motion brought thereunder. Appellant directs our attention to several decisions of the federal trial and intermediate appellate courts in which those courts considered affidavits containing hearsay in passing upon motions to dismiss for lack of personal jurisdiction.
 {¶ 18} Appellees argue that the trial court correctly concluded that the McCain affidavit lacks reliability because the affiant did not aver that she possesses the requisite personal knowledge to lay an appropriate foundation for any of the attached documents. Appellees direct our attention to decisions wherein federal courts have applied the rules of evidence to affidavits submitted in support of a defense of lack of personal jurisdiction.
 {¶ 19} In reply, appellant argues that the documents attached to the McCain affidavit should be considered because they "bear circumstantial indicia of reliability" and could "very well be admissible at trial" as business records and, because many of the documents appear to have been generated by appellees themselves, as admissions of a party-opponent. (Reply Brief of Appellant, at 2.)
 {¶ 20} Generally, the admission of evidence is within the discretion of the trial court, and the court's decision will be reversed only upon a showing of an abuse of discretion. State ex rel. Sartini v. Yost,96 Ohio St.3d 37, 2002-Ohio-3317, 770 N.E.2d 584, ¶ 21. "`Abuse of discretion' implies that the court acted in an unreasonable, arbitrary, or unconscionable manner." Ibid.
 {¶ 21} Our research has revealed no case in which a state court in Ohio has passed upon the question whether the rules of evidence and, specifically, Evid.R. 803(6), apply when a court considers a Civ.R. 12(B)(2) motion. The civil rule itself is silent on the issue. However, section 2317.40 of the Ohio Revised Code provides in pertinent part, "[a] record of an act, condition, or event, in so far as relevant, iscompetent evidence if the custodian or the person who made such record or under whose supervision such record was made testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission." (Emphasis added.) "Competence," with respect to business records, has been defined to mean "authenticity." Black's Law Dictionary (8 Ed. 2004) 302.
 {¶ 22} Thus, assuming without deciding, that Evid.R. 803(6) does not operate to bar hearsay evidence from consideration of a Civ.R. 12(B)(2) motion to dismiss filed in an Ohio trial court, R.C. 2317.40 nonetheless imposes basic foundational requirements upon a party seeking to introduce documents into evidence for the purpose of demonstrating that the court's exercise of personal jurisdiction would be proper. The statute contains no limitation as to the type of pretrial motion practice to which it applies. Because we decline to engage in judicial amendment of the statute by reading such a limitation into it, we hold that, pursuant to R.C.2317.40, the trial court was correct in requiring that the McCain affidavit itself contain statements sufficient to authenticate the documents attached thereto before the same could be considered.
 {¶ 23} In her affidavit Ms. McCain averred, in relevant part:
1. The following statements are based on my personal knowledge, information and belief. * * *
3. * * * I spent many months on site at Credit General's offices prior to the liquidation. During that time I developed a substantial familiarity with Credit General's records by examining the records and speaking with Credit General employees.
4. For several months after [appellant's predecessor] was appointed [as liquidator], I continued working at the Credit General offices to assemble, review and organize Credit General's records. Eventually we transferred the records to a warehouse in Columbus, where most are housed today. Some of the records are kept at the office of the Liquidator. I work at the warehouse, and have continued to assemble, review and organize these records.
5. Among the records I have reviewed are statements, memoranda, letters and facsimile transmissions between and among accountants or auditors of the PRS corporate family ("PRS"). * * * These records typically bear the signatures of one or more persons who, according to the records, had participated in the audits and/or the preparation of the financial statements and had attended meetings concerning the same in which some of the documents were recorded, and who signed to indicate that they had participated in the audits and/or meetings concerning the same, and/or had authored and/or reviewed and approved the records. It is evident from a review of such records that they were kept in the course of Credit General's regularly conducted business activity, and that it was Credit General's regular practice to make such records.
(McCain's aff. at 1-2.)
 {¶ 24} The foregoing statements fail to establish the identity and mode of the documents' preparation, or whether the documents were made in the regular course of business, at or near the time of the act, condition, or event with which they are concerned, such as would qualify the documents as "competent" under R.C. 2317.40. Ms. McCain's review of the records does not establish that she had personal knowledge of the circumstances of the preparation, maintenance and retrieval of the records, or of the operation of the business of CGIC and CGIND such that she could reasonably testify that the documents appellant sought to place in the record are what they purport to be. Because the McCain affidavit fails to lay an adequate foundation for the documents attached thereto, and because appellant offered no affidavit of any person who did have the requisite personal knowledge of the authenticity of the documents, under R.C. 2317.40, the documents were not competent evidence for purposes of defeating the motions to dismiss. Accordingly, the trial court did not abuse its discretion in refusing to consider the contents of the documents in passing upon appellees' motions.
 {¶ 25} We now turn to the issue of personal jurisdiction raised by the assignments of error. Because a trial court's determination as to whether it has personal jurisdiction over a party is a question of law, an appellate court reviews de novo a decision granting a Civ.R. 12(B)(2) motion. Cardinal Distribution v. Reade, 10th Dist. No. 02AP-1204, 2003-Ohio-2880, at ¶ 26.
 {¶ 26} When determining whether a state court has personal jurisdiction over a nonresident defendant, the court is obligated to (1) determine whether the state's "longarm" statute and the applicable Civil Rule confer personal jurisdiction, and if so, (2) whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. U.S. Sprint Communications Co. v. Mr. K'sFoods, Inc. (1994), 68 Ohio St.3d 181, 183-184, 624 N.E.2d 1048, 1051.
 {¶ 27} Once appellees challenged the trial court's jurisdiction with their motions to dismiss, appellant bore the burden of establishing that the trial court had jurisdiction over appellees. Robinson v. KochRefining Co. (June 17, 1999), 10th Dist. No. 98AP-900. Absent an evidentiary hearing, the trial court was permitted to dismiss the complaint pursuant to Civ.R. 12(B)(2) only if appellant failed to establish a prima facie case for the court's personal jurisdiction over appellees. KB Circuits, Inc. v. BECS Technology, Inc. (Jan. 18, 2001), 10th Dist. No. 00AP-621. If appellant produced sufficient evidence to allow reasonable minds to conclude that the trial court had personal jurisdiction over appellees, then the trial court could not dismiss the complaint without holding an evidentiary hearing. Ibid. Moreover, because the trial court did not hold an evidentiary hearing, it was required to "(1) view the allegations in the pleadings and the documentary evidence in the light most favorable to the nonmoving party, and (2) resolve all reasonable competing inferences in favor of the nonmoving party."Goldstein v. Christiansen (1994), 70 Ohio St.3d 232, 236, 638 N.E.2d 541;Cardinal Distribution, supra, at ¶ 24.
 {¶ 28} Given, however, that the trial court properly refused to consider the McCain affidavit and accompanying documents, the only evidence that was before the court on the issue of personal jurisdiction were the Steinhoff and Gellineau affidavits offered by appellees in support of their motions to dismiss. If these unrebutted affidavits support the conclusion that appellees never transacted any business in Ohio, then the Liquidator failed to meet her burden. See Upright Roboticsv. Legacy Marketing Group, Inc. (Sept. 3, 1992), 10th Dist. No. 92AP-374. Thus, the next step in our analysis is to examine the Steinhoff and Gellineau affidavits, in light of the requirements of Ohio's longarm statute and federal due process principles, to determine whether the affidavits contain facts sufficient to demonstrate that Ohio courts cannot properly exercise jurisdiction over appellees.
 {¶ 29} Jurisdiction may be general, in cases in which a defendant's "continuous and systematic" activities within the forum state render that defendant amenable to the jurisdiction of the forum state's courts.Perkins v. Benguet Consol. Mining Co. (1952), 342 U.S. 437, 445-447,72 S.Ct. 413, 96 L.Ed. 485. Jurisdiction may also be specific, in cases wherein the causes of action subject of the complaint arise out of or are related to the defendant's specific activity within the forum state.Nationwide Mut. Ins. Co. v. Tryg Internatl. Ins. Co. (C.A.6, 1996),91 F.3d 790, 793.
 {¶ 30} In contrast with general jurisdiction, specific jurisdiction may be premised upon a single act of the defendant. Id. at 794, citingMcGee v. Internatl. Life Ins. Co. (1957), 355 U.S. 220, 222, 78 S.Ct. 199,2 L.Ed.2d 223. "The nature and quality of the act, as well as the circumstances surrounding its commission, must be examined to determine whether personal jurisdiction exists in each case." Ibid., citingInternatl. Shoe Co. v. Washington (1945), 326 U.S. 310, 66 S.Ct. 154,90 L.Ed. 95. In the present case, the Liquidator bases the Ohio courts' jurisdiction over appellees upon appellees' alleged actions taken in connection with a specific transaction, namely, their performance of audit services for the offshore affiliates. The Liquidator argues that, in the course of their performance of those services, appellees took actions that constitute "transacting business" in Ohio such that they are amenable to this lawsuit.
 {¶ 31} Ohio's long-arm statute provides "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's * * * [t]ransacting any business in this state[.]" R.C. 2307.382(A)(1). The applicable rule of civil procedure is Civ.R. 4.3(A), which states, in pertinent part:
Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. "Person" includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's * * * [t]ransacting any business in this state[.]
 {¶ 32} The phrase "transacting any business" is broad and encompasses more than "contract." Clark v. Connor (1998), 82 Ohio St.3d 309, 312,695 N.E.2d 751. The term "transacting" as utilized in the phrase "transacting any business" encompasses "carrying on business" and "having dealings." Goldstein, supra, at 236. "With no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, the court must, therefore, rely on a case-by-case determination." U.S. Sprint, supra, at 185.
 {¶ 33} If a defendant is found amenable to suit in Ohio under the long-arm statute and applicable civil rule, then jurisdiction is properly exercised so long as the same would not offend due process principles applicable to the states through the Fourteenth Amendment to the United States Constitution. "The Due Process clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful `contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz (1985), 471 U.S. 462, 471-472,105 S.Ct. 2174, 85 L.Ed.2d 528. {¶ 34} In Internatl. Shoe Co. v.Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the United States Supreme Court held that a state may assert personal jurisdiction over a nonresident defendant if the nonresident has "* * * certain minimum contacts with it such that maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" Id. at 316. (Citation omitted.) The court emphasized that the analysis under the "minimum contacts" rule "cannot simply be mechanical or quantitative," but, rather, whether due process is satisfied depends "upon the quality and nature of the activity." Id. at 319.
 {¶ 35} Later, in Burger King, supra, the court concluded that "* * * the constitutional touchstone remains whether the defendant purposefully established `minimum contacts' in the forum State." Id. at 474, quotingInternatl. Shoe, supra, at 316. The "minimum contacts" standard serves two functions. First, it protects the nonresident defendant "against the burdens of litigating in a distant or inconvenient forum." World-WideVolkswagen Corp. v. Woodson (1980), 444 U.S. 286, 292, 100 S.Ct. 559,62 L.Ed.2d 490. Second, it ensures that the states do not encroach on each other's sovereign interest. Ibid.
 {¶ 36} The nonresident defendant has purposefully established minimum contacts where:
the contacts proximately result from actions by the defendant himself
that create a `substantial connection' with the forum State * * * where the defendant `deliberately' has engaged in significant activities within a State * * * or has created `continuing obligations' between himself and residents of the forum * * * he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by `the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.
Burger King, supra, at 475-476. (Emphasis sic.) (Citations omitted.)
 {¶ 37} Furthermore, minimum contacts are satisfied when the defendant foreseeably causes injury in the forum state if "`* * * the defendant's conduct and connection with the forum State are such that he shouldreasonably anticipate being haled into court there.'" * * * Id. at 474, quoting World-Wide Volkswagen Corp., supra, at 297. (Emphasis added.) TheBurger King court explained the contours of the "reasonably anticipate" notion in the following manner:
The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts[.] * * *
Burger King, supra, at 474-475. (Citations omitted.)
 {¶ 38} The exercise of personal jurisdiction over a nonresident defendant will not offend due process principles when the defendant's activities within the state are systematic and continuous. Internatl.Shoe, supra, at 319.
And while the casual presence of a corporate agent or a single or isolated act is not enough, "other such acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit. Thus where the defendant `deliberately' has engaged in significant activities within a State * * *, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by `the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. * * * [D]ue process is satisfied when a foreign corporation has certain minimum contacts with Ohio such that it is fair that a defendant defend a suit brought in Ohio and that substantial justice is done.
U.S. Sprint, supra, at 186-187. (Citations omitted.)
 {¶ 39} Personal jurisdiction is not automatically defeated by a lack of physical presence in the forum state. See, e.g., Kentucky Oaks MallCo. v. Mitchell's Formal Wear, Inc. (1990), 53 Ohio St.3d 73,559 N.E.2d 477; Cardinal Distribution v. Reade, 10th Dist. No. 02AP-1204, 2003-Ohio-2880, at ¶ 32.
 {¶ 40} The United States Supreme Court in the Burger King case also stated:
Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with `fair play and substantial justice.' * * * Thus courts in `appropriate cases[s]' may evaluate `the burden on the defendant,' `the forum State's interest in adjudicating the dispute,' `the plaintiff's interest in obtaining convenient and effective relief,' `the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the `shared interest of the several States in furthering fundamental substantive social policies.' * * * These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. * * * On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. * * *
Id. at 476-477. (Citations omitted.)
 {¶ 41} The United States Supreme Court has made it clear that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in Internatl. Shoe and its progeny." Shaffer v.Heitner (1977), 433 U.S. 186, 212, 97 S.Ct. 2569, 53 L.Ed.2d 683. Therefore, guided by the foregoing principles, we must decide whether the Liquidator established a prima facie case that the trial court could properly exercise personal jurisdiction over appellees.
 {¶ 42} With respect to the motion of KPMG Bermuda, the trial court had before it the affidavit of Mr. Steinhoff. Therein, Mr. Steinhoff avers that KPMG Bermuda is a Bermuda partnership operating in Hamilton, Bermuda, and wholly owned by its partners, all of whom are residents of Bermuda. He states that KPMG Bermuda is a dues-paying member of KPMG International, a Swiss association that does not perform professional services but distributes practice and other guidelines that all members voluntarily follow. KPMG Bermuda is a signatory to a license agreement and a membership agreement with KPMG International, but KPMG Bermuda is solely responsible for its own day-to-day operations.
 {¶ 43} Mr. Steinhoff states that KPMG Bermuda has only one office, located in Bermuda, and maintains no other place of business anywhere. It is not licensed to do business in Ohio. It has no operations, bank accounts or assets in Ohio, and does not advertise or market its services to Ohio-based entities. It has "from time to time," provided professional services in Bermuda to Bermuda-based affiliates or subsidiaries of Ohio-based corporations. But none of its employees or partners resides in, or routinely performs work in, the United States. KPMG Bermuda has never performed any accounting or other services to PRS Group, CGIC or CGIND.
 {¶ 44} According to Mr. Steinhoff, in 1995, Barbados-based Captech Management Services (Barbados) Ltd., which managed the offshore affiliates, retained KPMG Bermuda to assist KPMG Barbados in auditing the offshore affiliates. KPMG Bermuda did not render an opinion on the offshore affiliates' financial statements. Mr. Steinhoff avers that KPMG Bermuda has never had a contractual relationship with PRS Group, CGIC or CGIND, and has never made oral or written assurances to any Ohio-based PRSrelated entity with respect to the audits of the offshore affiliates.
 {¶ 45} Over the four years it assisted with the offshore affiliates' audits, KPMG Bermuda personnel took three trips to the Beachwood, Ohio offices of an entity called PRS Management Group, Inc. The trips lasted from one to two days each, and involved one or two KPMG Bermuda personnel. The trips involved the review of systems and data at PRS Management Group, Inc.
 {¶ 46} Mr. Steinhoff states that most of the correspondence originating from KPMG Bermuda respecting the offshore affiliates' audits was sent to local independent managers of KPMG Barbados, but that KPMG personnel corresponded "on several occasions" with PRS Management Group, Inc., employees. But these contacts "were infrequent and were initiated primarily for the limited purpose of obtaining information regarding balances and reserves. This is standard operating procedure during any audit of a reinsurer regardless of whether the insured is an affiliated company or not." (Steinhoff Affidavit, at ¶ 16.) Mr. Steinhoff avers that KPMG Bermuda personnel sent fewer than 20 pieces of written correspondence (including faxes) to individuals in Ohio.
 {¶ 47} Finally, Mr. Steinhoff states that it would be difficult and costly for KPMG Bermuda to defend the instant lawsuit in Ohio because its partners and employees involved with the subject matter of the case would be required to travel between Bermuda and Ohio for pretrial and trial proceedings, perhaps for extended periods of time, which would impose a hardship on these individuals, their families and on KPMG Bermuda's business operations.
 {¶ 48} Given all of these facts, we find that KPMG Bermuda did not "transact business" in Ohio in the course of completion of its auditing services for the offshore affiliates. Twenty pieces of correspondence with Ohio-based PRS Group personnel over four years does not establish that KPMG Bermuda transacted business in this state. As a general rule, the use of interstate lines of communication such as mail, facsimiles and telephones, does not automatically subject a defendant to the jurisdiction of the courts in the forum state. Fritz-Rumer-Cooke Co.,Inc. v. Todd Sargent (Feb. 8, 2001), 10th Dist. No. 00AP-817, discretionary appeal not allowed in (2001), 92 Ohio St.3d 1418,748 N.E.2d 550.
 {¶ 49} The several trips that KPMG Bermuda personnel made to Ohio over a four-year period, for the purpose of gathering information about balances and reserves, when such information-gathering is standard procedure for the type of audit KPMG Bermuda was performing, likewise do not constitute the kind of dealings that would render KPMG Bermuda amenable to suit in Ohio. These trips were undertaken by KPMG Bermuda solely in order to perform its obligations under its contracts with the offshore affiliates, and should not be considered in determining whether personal jurisdiction exists. See Nationwide Mutual Ins. Co. v. TrygInternatl. Ins. Co. (C.A.6, 1996), 91 F.3d 790, 796.
 {¶ 50} We also find, from the facts adduced, that KPMG Bermuda did not purposely establish minimum contacts in Ohio such as would create a substantial connection with the state sufficient to ensure that Ohio courts' exercise of jurisdiction over KPMG Bermuda would not offend traditional notions of fair play and substantial justice. The quality and nature of KPMG Bermuda's contacts with Ohio do not establish a substantial connection with Ohio such that it was reasonably foreseeable to KPMG Bermuda that it would be haled into court here.
 {¶ 51} Moreover, there is no competent evidence of record that KPMG Bermuda could have reasonably foreseen that its activities in Ohio would directly result, as the Liquidator alleges, in the insolvency and ultimate liquidation of CGIC and CGIND. It is unreasonable to subject a foreign auditor to the jurisdiction of courts in a state in which it solicits no business, is not licensed to perform professional accounting services, maintains no assets or property, has not been retained to perform professional accounting services, and visited only a handful of times over a four-year period in connection with its performance of a contract with an entity not domiciled in that state, simply because the foreign reinsurance company that it audited happens to have reinsured the risks of an insurance company domiciled in the state.
 {¶ 52} Absent evidence from which reasonable minds could conclude that KPMG Bermuda knew or should have known that its offshore professional activities would harm CGIC or CGIND, the exercise of Ohio courts' jurisdiction in the instant case would offend due process principles. Because the Steinhoff affidavit was the only competent evidence before the trial court, and this affidavit contains no evidence from which reasonable minds could conclude that KPMG Bermuda foresaw or should have foreseen that it would cause harm in this state, the trial court correctly concluded that it lacked jurisdiction over KPMG Bermuda. Accordingly, appellant's first assignment of error is overruled.
 {¶ 53} With respect to the motion of KPMG Barbados, the trial court had before it the affidavit of Mr. Gellineau. Therein, he avers that KPMG Barbados is a partnership organized under the laws of Barbados and whose principal place of business is in Hastings, Barbados. The firm also maintains offices in St. Lucia, St. Vincent and Antigua. It is owned by partners who reside in Barbados or in one of the branch office locations, and is affiliated with KPMG International in the same fashion as is KPMG Bermuda. Like KPMG Bermuda, KPMG Barbados has no office in the United States, is not authorized to do business or to practice accounting in Ohio, does not advertise or market its services in Ohio, and maintains no operations, bank accounts or assets in Ohio.
 {¶ 54} Mr. Gellineau further avers that no KPMG Barbados employees reside in or routinely undertake work in the United States, and that KPMG Barbados has never rendered auditing or other accounting services to PRS Group, CGIC or CGIND. Captech Management Services (Barbados), Ltd., (a Barbados-based entity) and Captech Management Services (Bermuda), Ltd., (a Bermuda-based entity) engaged KPMG Barbados in 1995 to perform audits for the offshore affiliates. KPMG Barbados did not enter into any contractual relationships with PRS Group, CGIC or CGIND in connection with the rendering of accounting services to the offshore affiliates.
 {¶ 55} Mr. Gellineau states that KPMG Barbados' primary contacts, for purposes of auditing the offshore affiliates, were with the independent managers of the Barbadosbased reinsurers. KPMG Barbados employees never sent any correspondence to individuals in Ohio, and never traveled outside of Barbados or the branch office locations, in connection with the four years of accounting services performed for the offshore affiliates. Finally, Mr. Gellineau states that it would difficult and costly for KPMG Barbados to defend this lawsuit in Ohio, due to its lack of any facilities or business contacts in Ohio and in the United States.
 {¶ 56} From these facts, we readily conclude that the trial court lacked jurisdiction over KPMG Barbados. That entity directed no correspondence to Ohio, sent no personnel to Ohio, performed no services in Ohio, had no contractual relations with Ohio entities or persons, maintains no offices in Ohio or any other state, is not authorized to do business or to practice accounting in Ohio, does not advertise or market its services in Ohio, and maintains no operations, bank accounts or assets in Ohio. There is no evidence that KPMG Barbados had reason to believe that its conduct outside of Ohio would directly harm CGIC or CGIND. Thus, we find that the exercise of Ohio courts' jurisdiction over KPMG Barbados would be improper both under Ohio's long-arm statute and under federal due process principles. For the all of the foregoing reasons, appellant's second assignment of error is overruled.
 {¶ 57} Having overruled both of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Brown, P.J., and Lazarus, J., concur.