OPINION
{¶ 1} Plaintiffs-appellants, Barnabas Consulting, Ltd. ("Barnabas") and David B. Petrel, appeal from a judgment of the Franklin County Court of Common Pleas dismissing appellants' complaint against defendant-appellee, Riverside Health System, Inc. For the following reasons, we reverse and remand.
 {¶ 2} Petrel is the owner of Barnabas, a small business that plans, develops, and manages outpatient, low-risk catheterization labs. Barnabas' principal place of business is located in Columbus, Ohio. Riverside Healthcare Association, Inc. d/b/a Riverside *Page 2 
Health System ("Riverside") serves as a parent corporation to various healthcare-related entities, including hospital facilities. Riverside's principal place of business is located in Newport News, Virginia.
 {¶ 3} In December 2003, Rick Pierce, Riverside's CEO, contacted Petrel and expressed interest in retaining Barnabas' consulting services. At Pierce's request, Petrel traveled from Ohio to Newport News, Virginia, to give a presentation to Riverside administrators proposing the development of a catheterization lab joint venture. After Petrel returned to Ohio, he and Michael J. Doucette, Riverside's Vice President, negotiated a contract for Barnabas' consulting services via telephone and email. Petrel sent the final version of the agreed contract, entitled "Consulting Services Agreement," to Doucette the day before beginning work on the project. Neither Petrel nor any Riverside representative ever signed the consulting agreement.
 {¶ 4} The consulting agreement contemplated that Barnabas would approach the joint venture project in three phases. In the first phase, Barnabas would collect and analyze physician, demographic, billing, and financial data. At the end of phase one, Barnabas would supply sufficient information to Riverside for it to judge the feasibility of the joint venture. If Riverside decided to pursue the joint venture, then Barnabas would initiate phase two, which would involve the preparation of a private offering memorandum and the distribution of that memorandum to eligible physicians. Phase three would begin with the successful closing of the joint venture offering, and it would include constructing, equipping, and staffing the catheterization lab.
 {¶ 5} In addition to setting forth the three phases, the consulting agreement provided that Riverside could terminate the agreement on one day's notice for any reason *Page 3 
it deemed appropriate. But, Riverside agreed to pay Barnabas an early termination fee of $50,000 if it terminated the agreement for any reason other than Barnabas' material breach of the agreement or a determination not to pursue a joint venture after the completion of phase one.
 {¶ 6} From January to May 2004, Petrel and the subcontractors he hired worked on phase one of the project. Aside from Petrel's eight trips to Virginia to meet with Riverside administrators and physicians, the work on phase one took place in Ohio. During this time, Petrel and the subcontractors communicated with Riverside employees by email and telephone on a weekly, sometimes daily, basis.
 {¶ 7} Upon the completion of phase one, Doucette told Petrel that Riverside had decided not to pursue the joint venture, and he terminated the consulting agreement. Sometime thereafter, Petrel learned that Riverside did, in fact, proceed to phase two of the project, and it used Barnabas' work product from phase one as a basis for continuing the project. Petrel advised Riverside that its actions triggered the early termination provision of the consulting agreement, and he demanded that Riverside pay Barnabas the $50,000 early termination fee. Riverside refused.
 {¶ 8} On June 7, 2007, appellants filed a breach of contract action against Riverside, alleging that Riverside breached the consulting agreement when it refused to pay Barnabas the $50,000 early termination fee. Riverside responded with a motion to dismiss pursuant to Civ. R. 12(B)(2), (4), and (5), as well as the doctrine of forum non conveniens. In essence, Riverside asserted three grounds for dismissal: (1) appellants sued an entity that does not exist when they named "Riverside Health System, Inc." and not "Riverside Healthcare Association, Inc." as the defendant; (2) the trial court could not *Page 4 
exercise personal jurisdiction over Riverside; and (3) Virginia, not Ohio, was the appropriate forum for appellants' suit.
 {¶ 9} On November 14, 2007, the trial court issued a decision and entry granting Riverside's motion and dismissing appellants' complaint. In so ruling, the trial court held that it lacked personal jurisdiction over Riverside. Because this holding made Riverside's other arguments moot, the trial court declined to address them.
 {¶ 10} Appellants now appeal the trial court's November 14, 2007 order and assign the following error:
 The Court of Common Pleas erred in finding that the exercise of personal jurisdiction over Riverside Health System, Inc. does not comport with due process.
 {¶ 11} By its sole assignment of error, appellants argue that the trial court erred in granting Riverside's Civ. R. 12(B)(2) motion to dismiss for lack of personal jurisdiction. We agree.
 {¶ 12} Once a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff must prove that the trial court has jurisdiction over the defendant. Joffe v. Cable Tech, Inc.,163 Ohio App.3d 479, 2005-Ohio-4930, at ¶ 10; Benjamin v. KPMG Barbados, Franklin App. No. 03AP-1276, 2005-Ohio-1959, at ¶ 27. If a trial court does not hold an evidentiary hearing before considering the defendant's dismissal motion, the court must "view allegations in the pleadings and the documentary evidence in a light most favorable to the plaintiff, resolving all reasonable competing inferences in [its] favor."Goldstein v. Christiansen (1994), 70 Ohio St.3d 232, 236. Moreover, in the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction to withstand the motion to dismiss.State ex rel. Attorney General v. Grand Tobacco, *Page 5 171 Ohio App.3d 551, 2007-Ohio-418, at ¶ 13; Ricker v. Fraza/Forklifts of Detroit,160 Ohio App.3d 634, 2005-Ohio-1945, at ¶ 5. A plaintiff satisfies this burden by presenting sufficient evidence to allow reasonable minds to conclude that the trial court has personal jurisdiction. Joffe, at ¶ 10. An appellate court employs the de novo standard to review a decision granting a Civ. R. 12(B)(2) motion to dismiss for lack of personal jurisdiction. Ricker v. Fraza/Forklifts of Detroit, at ¶ 5;Long v. Grill, 155 Ohio App.3d 135, 2003-Ohio-5665, at ¶ 11.
 {¶ 13} When determining whether Ohio has jurisdiction over a foreign corporation, courts must engage in a two-step inquiry. State ex rel.Toma v. Corrigan (2001), 92 Ohio St.3d 589, 592; U.S. SprintCommunications Co. Ltd. Partnership v. Mr. K's Foods, Inc. (1994),68 Ohio St.3d 181, 183; Kentucky Oaks Mall Co. v. Mitchell's Formal Wear,Inc. (1990), 53 Ohio St.3d 73, 75. First, a court must determine whether Ohio's long-arm statute, R.C. 2307.382, and the applicable Ohio Rule of Civil Procedure, Civ. R. 4.3(A), confer jurisdiction. Toma, at 592;U.S. Sprint, at 184; Kentucky Oaks Mall Co., at 75. If the court affirmatively answers the first inquiry, it then must determine whether granting jurisdiction would deprive the foreign corporation of due process of law under the Fourteenth Amendment of the United States Constitution. Id.
 {¶ 14} Pursuant to R.C. 2307.382(A)(1), "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's * * * [t]ransacting any business in this state." Likewise, Civ. R. 4.3(A), permits service of process upon any person "who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's * * * [t]ransacting any business in this state." Both the statute and the rule are broadly worded and permit jurisdiction over any nonresident defendant who is *Page 6 
transacting business in Ohio. Kentucky Oaks Mall Co., at 75. To "transact" means" `to prosecute negotiations; to carry on business; to have dealings * * *.'" Id., quoting Black's Law Dictionary (5 Ed. 1979) 1341 (emphasis omitted). "Transacting any business" encompasses more than just contracting; it also includes business negotiations that the parties have only partially brought to a conclusion. Id. See, also,Goldstein, at 236.
 {¶ 15} That a foreign corporation solicited business in Ohio is not alone sufficient to constitute "transacting any business." U.S.Sprint, at 185. However, a foreign corporation's initiation of the parties' business dealings is a factor that courts must assess in determining whether the foreign corporation was transacting business in Ohio. Ricker v. Fraza/Forklifts of Detroit, at ¶ 13; Ricker v. Bobcat ofOrlando, Inc., Franklin App. No. 04AP-481, 2004-Ohio-6070, at ¶ 12;Long, at ¶ 18. Additionally, courts must consider "in which jurisdiction the parties undertook their discussions and communications, and on what terms," as well as whether the foreign corporation submitted payments to an Ohio-based plaintiff. Ricker v. Fraza/Forklifts of Detroit, at ¶ 14. See, also, Diversea, Inc. v. Pennsylvania Substance Abuse InformationCtr (Mar. 29, 1996), Portage App. No. 95-P-0028 (holding that nonresident defendants-appellants were "transacting any business" in Ohio where "appellants initiated contract negotiations with appellee in Ohio; the negotiations were carried on by mail and telephone with appellee at its office in Kent, Ohio; the signed contracts were sent to appellee in Ohio; appellee performed the vast majority of services under the contracts in Ohio, as contemplated by the parties; and, an ongoing relationship was established requiring appellants to transmit all payments to appellee in Ohio"); Hammill Mfg. Co. v. Quality RubberProducts, Inc. (1992), 82 Ohio App.3d 369, 374 (holding that a foreign corporation is "transacting any business" in Ohio *Page 7 
where it "initiates, negotiates a contract, and through the course of dealing becomes obligated to make payments to an Ohio corporation").
 {¶ 16} In the case at bar, Riverside initiated the parties' business relationship when Pierce contacted Petrel at Barnabas' Columbus office. Through telephone and email, Doucette and Petrel negotiated and agreed to a contract for Barnabas' consulting services while Petrel was in Ohio.[1] Most of Barnabas' work on the joint venture project occurred in Ohio and Riverside remitted contractual payments to Barnabas' Columbus office. Based upon the totality of these circumstances, we find that reasonable minds could conclude that Riverside was "transacting any business" in Ohio within the meaning of R.C. 2307.382(A)(1) and Civ. R. 4.3(A)(1). Therefore, we determine that appellants made the necessary prima facie showing under the first prong of the two-step inquiry into the existence of personal jurisdiction.
 {¶ 17} We next turn to the second prong of the two-step inquiry and consider whether Ohio's exercise of jurisdiction over Riverside would comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Due Process Clause protects a nonresident defendant from being subject to the binding judgment of a forum with which it has not established any "minimum contacts."International Shoe Co. v. Washington (1945), 326 U.S. 310, 316,66 S.Ct. 154. A nonresident defendant creates minimum contacts with a forum when: (1) it "has *Page 8 
purposefully directed his activities at residents of the forum" and (2) "the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz (1985),471 U.S. 462, 472, 105 S.Ct. 2174 (quotations omitted).[2] Consequently, jurisdiction is proper where the nonresident defendant has deliberately engaged in "significant activities" in the forum, thus creating a "substantial connection" with the forum. Id. at 475-476. If a nonresident defendant establishes such a "substantial connection," it "`should reasonably anticipate being haled into court'" in the forum. Id. at 474, quoting World-Wide Volkswagen Corp. v. Woodson (1980),444 U.S. 286, 297, 100 S.Ct. 559.
 {¶ 18} Once a court finds that minimum contacts exist, it must determine whether "the assertion of personal jurisdiction would comport with `fair play and substantial justice.'" Burger King Corp., at 476, quoting International Shoe Co., at 320. In reviewing the reasonableness of retaining jurisdiction, courts may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."World-Wide Volkswagen Corp., at 292.
 {¶ 19} In the case at bar, many of the same facts we analyzed with regard to whether Riverside was "transacting any business" in Ohio are also relevant to whether *Page 9 
Riverside purposefully availed itself of the privilege of acting in Ohio. Riverside's CEO initiated the parties' business relationship by telephoning Petrel in Ohio. Riverside's Vice President and Petrel negotiated and agreed to the consulting contract while Petrel was in Ohio. The majority of the phase one work was completed in Ohio. During the course of performing the phase one work, Petrel and Barnabas' subcontractors, who were located in Ohio, conducted numerous and lengthy communications with Riverside administrators and physicians via telephone and email. Finally, Riverside sent all contractual payments to Barnabas' Columbus address. Given these facts, we find that reasonable minds could conclude that Riverside purposefully directed its activities at residents of Ohio and, thus, appellants satisfied their prima facie burden with regard to the "purposeful availment" factor.
 {¶ 20} Riverside, however, argues that its contacts with Ohio were random, fortuitous, and attenuated and, as such, they cannot form the basis for the exercise of jurisdiction. First, we agree with Riverside that the email and telephone communications, standing alone, could not justify Ohio's jurisdiction over Riverside. "The use of interstate facilities such as the telephone and the mail is a `secondary or ancillary' factor and `cannot alone provide the "minimum contacts" required by due process * * *.'" Joffe, at ¶ 33, quoting LAK, Inc. v.Deer Creek Ent. (C.A.6, 1989), 885 F.2d 1293, 1301. See, also,Fritz-Rumer-Cooke Co., Inc. v. Todd Sargent (Feb. 8, 2001), Franklin App. No. 00AP-817 (" `As a general matter, * * * the use of interstate lines of communication such as mail service, facsimiles, and telephones is not automatically a purposeful availment of the privileges of conducting commerce in a forum state such that a nonresident should anticipate being haled into court there.'") (Citation omitted.) However, in this case, email *Page 10 
and telephone communications are just one factor supporting the exercise of jurisdiction. Viewing the email and telephone communications in conjunction with the other facts set forth above, we find that a reasonable person could conclude that sufficient minimum contacts exist.
 {¶ 21} Second, we recognize that certain activities underlying the parties' business relationship occurred in Virginia. However, a connection to Virginia does not necessarily negate Riverside's "substantial connection" to Ohio. The jurisdictional test focuses upon whether Riverside "purposefully directed" its activities toward residents of the forum state, not whether activities related to the parties' business transaction also occurred in other forums. Burger KingCorp., at 472.
 {¶ 22} Third, we do not find that a Virginia choice-of-law provision automatically defeats a finding that minimum contacts exist.Kentucky Oaks Mall Co., at 78. Courts must examine the quality and nature of all the contacts a nonresident defendant makes with the forum during the course of the parties' contractual relationship. Burger KingCorp., at 479 (holding that a court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining "whether the defendant purposefully established minimum contacts within the forum"). Here, although the choice-of-law provision factors into our analysis, we do not find it so significant that it reverses our conclusion that Riverside purposefully availed itself of the privilege of acting in Ohio.
 {¶ 23} Finally, we do not agree with Riverside that the parties' contractual relationship can be characterized as a "one-shot deal." Generally, "`a one-shot deal' or a single, isolated act" is insufficient to establish the necessary minimum contacts for the *Page 11 
exercise of jurisdiction. Ricker v. Bobcat of Orlando, Inc., at ¶ 17;Long, at ¶ 24. In the case at bar, the parties agreed to a contract that, if performed in full, would have required 13 to 19 months to complete. In fact, phase one — which Barnabas completed — lasted approximately five months. Although the parties' business relationship was not as lasting or involved as some, it was certainly more significant than a single contract for the sale of goods. See, e.g.,Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc. (N.D.Ohio 1996), 943 F.Supp. 825, 830 (holding that a contract for the sale of a Ferrari to an Ohio resident, without more, does not automatically establish sufficient minimum contacts).
 {¶ 24} We next consider whether the present "litigation results from alleged injuries that arise out of or relate to" the Ohio-based activities. Burger King Corp., at 472 (quotation omitted). In the case at bar, Riverside's activities in Ohio revolved around the initiation, negotiation, and performance of the consulting agreement. Because appellant's action is for breach of that consulting agreement, the litigation naturally arises from Riverside's Ohio activities. TharoSys., Inc. v. cab Produkttechnik GmbH Co. Kg (C.A.6, 2006), 196 Fed.Appx. 366, 371. See, also, In-Flight Devices, Inc. v. Van Dusen Air,Inc. (C.A.6, 1972) 466 F.2d 220, 229, overruled on other grounds byCole v. Mileti (C.A.6, 1998), 133 F.3d 433 ("Defendant's transaction of business in Ohio — its entering of a contractual relationship with an Ohio corporation — is necessarily the very soil from which the action for breach grew.").
 {¶ 25} Finally, we must consider whether "the assertion of personal jurisdiction would comport with `fair play and substantial justice.'"Burger King Corp., at 476, quoting International Shoe Co., at 320. When a plaintiff demonstrates the existence of minimum contacts, an inference arises that the exercise of jurisdiction is reasonable. In re Blue *Page 12 Flame Energy Corp., 171 Ohio App.3d 514, 2006-Ohio-6892, at ¶ 28. As the Supreme Court of the United States held:
 [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional.
Burger King Corp., at 477.
 {¶ 26} In the case at bar, Ohio has a strong interest in adjudicating this suit because it was brought by an Ohio resident and Ohio "`has a substantial interest in seeing that its residents get the benefit of their bargains.'" Kentucky Oaks Mall Co., at 78, quoting WrightInternatl. Express, Inc. v. Roger Dean Chevrolet, Inc. (S.D.Ohio 1988),689 F.Supp. 788, 791. Additionally, we do not believe that adjudication in Ohio would impose an excessive burden upon Riverside. Although virtually all of the Riverside witnesses are Virginia residents, "`modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.'" Burger King Corp., at 474, quotingMcGee v. International Life Ins. Co. (1957), 355 U.S. 220, 223,78 S.Ct. 199. Further, we note that, using discovery procedures provided for in the Ohio Rules of Civil Procedure, the parties can gather and present evidence in such a way as to limit — if not eliminate — the need for the Virginia witnesses to travel to Ohio. After weighing the relevant considerations, we find that reasonable minds could conclude that Ohio's assertion of personal jurisdiction over Riverside is reasonable. *Page 13 
 {¶ 27} In sum, because both Ohio law and the Due Process Clause permit the exercise of personal jurisdiction over Riverside, we conclude that the trial court erred in dismissing appellants' action. Accordingly, we sustain appellants' assignment of error.
 {¶ 28} Riverside, however, urges us to affirm the trial court's dismissal of appellants' action because: (1) appellants named the wrong entity as defendant; and (2) under the doctrine of forum non conveniens, Ohio is not an appropriate forum for the action. Riverside made both of these arguments before the trial court, but in deciding Riverside's motion to dismiss, the trial court expressly declined to address either argument, finding them both moot. Because this court is a reviewing court, we generally do not consider for the first time on appeal issues that the trial court did not decide. Young v. Univ. of Akron, Franklin App. No. 06AP-1022, 2007-Ohio-4663, at ¶ 22; PNP, Inc. v. Ohio Dept. ofJob Family Serv., Franklin App. No. 04AP-1294, 2006-Ohio-1159, at ¶ 21. Here, we find that both arguments are best decided by the trial court in the first instance. Thus, we decline to consider them.
 {¶ 29} For the foregoing reasons, we sustain appellants' sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas, and we remand this case to that court for further proceedings in accordance with law and this opinion.
Judgment reversed and cause remanded.
BRYANT and FRENCH, JJ., concur.
[1] Riverside repeatedly asserts that the consulting agreement was formed during a presentation in Virginia when Petrel made an oral offer which Riverside accepted. Petrel, however, contradicts this assertion in his affidavit, stating that he and Doucette negotiated and agreed to the consulting agreement through telephone calls and emails made while Petrel was in Ohio. Because we must construe the facts in appellants' favor, we rely upon Petrel's version of events.
[2] This is the test for specific jurisdiction. A court may exercise either specific or general jurisdiction over a defendant.Helicopteros Nacionales de Colombia, S.A. v. Hall (1984), 466 U.S. 408,414-415, 104 S.Ct. 1868. Unlike specific jurisdiction, general jurisdiction is based upon "continuous and systemic" contacts with a forum unrelated to the underlying action. Id. at 415. In the case at bar, appellants do not assert the existence of general jurisdiction, and thus, we will not address it. *Page 1