[Cite as *Ricker v. Mercedez-Benz of Georgetown*, 2022-Ohio-1860.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| James G. Ricker, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 21AP-43<br>(C.P.C. No. 20CV-5412) |
| Mercedes-Benz of Georgetown et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 2, 2022

**On brief:** *Law Offices of James P. Connors*, and *James P. Connors*, for appellant. **Argued:** *James P. Connors*.

**On brief:** *Weston Hurd LLP, Matthew C. Miller*, and *Tina Y. Rhodes*, for appellees. **Argued:** *Matthew C. Miller*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, James G. Ricker, appeals from a judgment of the Franklin County Court of Common Pleas granting the Civ.R. 12(B)(2) motion to dismiss filed by defendants-appellees Mercedes-Benz of Georgetown ("MBG"), Group 1 Automotive, Inc. ("Group 1"), and Sterling McCall Group ("Sterling McCall") (collectively, "defendants"). For the reasons which follow, we reverse and remand the case for further proceedings.

**I. Facts and Procedural History**

{¶ 2} On August 17, 2020, plaintiff filed a complaint in the trial court asserting claims for violation of the Ohio Consumer Sales Practices Act, negligent and/or intentional misrepresentation and fraud, and breach of contract. The complaint arose from a contract between plaintiff and MBG for the sale of a Mercedes Benz E450 automobile. MBG is a motor vehicle dealership located in Georgetown, Texas, and is a wholly owned subsidiary

of Group 1. Group 1 is an international automobile retailer with its principal place of business in Houston, Texas. Group 1 owns and operates several automobile dealerships in Houston, Texas under the trade name "Sterling McCall Group."

{¶ 3} On October 13, 2020, defendants filed a joint motion to dismiss the complaint for lack of personal jurisdiction. Defendants alleged that they did not live in Ohio, own or occupy property in Ohio, or have any connection to Ohio. Defendants stated that, although Group 1 owns automobile dealerships throughout the United States, Group 1 did not "own or operate any dealerships in Ohio." (Mot. to Dismiss, Steve Sonsik Hwang Aff. at ¶ 13.)

{¶ 4} Plaintiff filed a memorandum contra defendants' motion to dismiss on November 6, 2020 and submitted his personal affidavit with the memorandum. Defendants filed a reply in support of their motion to dismiss on November 11, 2020.

{¶ 5} The complaint and plaintiff's affidavit demonstrate that plaintiff's daughter leased a vehicle from MBG in Texas. During the lease transaction, plaintiff's daughter mentioned to a MBG sales agent that her father "might be interested in purchasing an E450 Mercedes automobile." (Memo Contra Mot. to Dismiss, James G. Ricker Aff. at ¶ 2.) The sales agent asked plaintiff's daughter for plaintiff's contact information. Sometime later, plaintiff "received a phone call from the [MBG] sales agent" at plaintiff's home in Hilliard, Ohio. (Ricker Aff. at ¶ 3.) The MBG sales agent informed plaintiff that she had spoken to his daughter and wanted to sell him a vehicle; plaintiff told the sales agent he was interested in purchasing the E450 automobile. The sales agent informed plaintiff that MBG did not have the E450 vehicle, but "that they could find it for [plaintiff] and sell it to [him]." (Ricker Aff. at ¶ 3.) The MBG sales agent "called [plaintiff] again" and stated she had located the vehicle, but she needed to speak to her manager regarding the sale price. (Ricker Aff. at ¶ 4.) Plaintiff then received a call from the MBG sales manager, who told plaintiff that MBG "had located and lined up a car to sell [plaintiff] from Houston, but that [MBG] had to 'trade' a car in order to make the deal happen." (Ricker Aff. at ¶ 5.) During their phone conversation, the MBG sales manager "gave [plaintiff] a verbal price for the vehicle which was acceptable to [plaintiff]." (Ricker Aff. at ¶ 5.) The sales manager then "called [plaintiff] again and told [plaintiff] that [they] had a deal." (Ricker Aff. at ¶ 5.)

**{¶ 6}** MBG mailed a contract to plaintiff regarding the sale of the vehicle. Plaintiff signed the contract at his home in Ohio and mailed the contract back to MBG in Texas.[1] Pursuant to the instructions in the contract, plaintiff wired the purchase price of $75,000 from his bank in Ohio to "Sterling McCall T" in Texas on June 10, 2020. (Ricker Aff. at ¶ 7; Compl. at ¶ 9, Ex. A.) MBG then "called [plaintiff], again at [his] home," and asked that he pay the balance due on the transaction by credit card. (Ricker Aff. at ¶ 7.) Plaintiff paid the balance of $1,831.31 "by credit card over the phone from [his] home." (Ricker Aff. at ¶ 7.)

**{¶ 7}** Sometime thereafter, MBG contacted plaintiff and informed him they would not complete the transaction or deliver the vehicle, as MBG would not "mak[e] enough money on the transaction." (Ricker Aff. at ¶ 9.) Defendants eventually refunded "most" of the purchase price to plaintiff. (Ricker Aff. at ¶ 10.) Plaintiff located and purchased the E450 vehicle from another dealership, at a price which was $6,000 more than the agreed upon sale price with MBG. Plaintiff averred MBG was the "entity that [he] was told was conducting the transaction," that MBG was also "apparently known as Group 1," and that he had paid the purchase price to an entity named Sterling McCall. (Ricker Aff. at ¶ 12.)

**{¶ 8}** On January 4, 2021, without holding an evidentiary hearing, the trial court issued a decision granting defendants' motion to dismiss. Regarding MBG, the court concluded that MBG had transacted business in Ohio for purposes of Ohio's long-arm statute, but that Ohio's exercise of jurisdiction over MBG would offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The court noted that it was plaintiff's daughter who "initiated the transaction between Plaintiff and MBG," and found, relying on *Austin Miller Am. Antiques, Inc. v. Cavallaro*, 10th Dist. No. 11AP-400, 2011-Ohio-6670, that a "single transaction for the purchase of a motor vehicle from MBG by Plaintiff did not result in minimum contacts with Ohio required by the Due Process Clause." (Decision at 8.) Finding it lacked personal jurisdiction over MBG, the court also concluded it lacked personal jurisdiction over Group 1 and Sterling McCall.

---

[1] Neither party produced a copy of the sales contract. Plaintiff alleged in the complaint that he "unfortunately did not retain copies of all of the documents returned to defendants for the sale and purchase of the vehicle." (Compl. at ¶ 8.)

## II. Assignment of Error

{¶ 9} Plaintiff appeals and assigns the following sole assignment of error for our review:

> The trial court erred by granting Defendants' Joint Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Civ.R. 12(B)(2).

## III. Analysis

{¶ 10} Plaintiff's sole assignment of error asserts the trial court erred by granting defendants' motion to dismiss for lack of personal jurisdiction. Plaintiff contends the trial court erred by finding that Ohio's exercise of jurisdiction over MBG would violate MBG's right to due process.

{¶ 11} "Personal jurisdiction is a question of law that appellate courts review de novo." *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, ¶ 27. When a defendant files a Civ.R. 12(B)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the trial court has personal jurisdiction over the defendant. *Id.*, citing *Fallang v. Hickey*, 40 Ohio St.3d 106, 107 (1988).

{¶ 12} If the court determines a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, "the plaintiff need only establish a prima facie showing of personal jurisdiction, which requires sufficient evidence to allow reasonable minds to conclude that the trial court has personal jurisdiction." *Cavallaro* at ¶ 7. In the absence of an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, "the court must view the allegations in the pleadings and the evidence in the light most favorable to the plaintiff and make all reasonable inferences in the plaintiff's favor." *Simmons v. Budde*, 10th Dist. No. 14AP-846, 2015-Ohio-3780, ¶ 7, citing *Kauffman Racing* at ¶ 27. *Accord Cavallaro* at ¶ 7, quoting *Wilkerson Shoe Co. v. Natl. Super Mkts., Inc.*, 10th Dist. No. 94APE01-116 (July 26, 1994) (stating that, absent an evidentiary hearing, "[t]he trial court 'must assume the truth of the facts in the nonmoving party's affidavits and complaint for purposes of [a Civ.R. 12(B)(2)] motion to dismiss' "); *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236 (1994). If a plaintiff produces sufficient evidence to allow reasonable minds to conclude the trial court has personal jurisdiction over a defendant, "then the trial court

could not dismiss the complaint without holding an evidentiary hearing." *Benjamin v. KPMG Barbados*, 10th Dist. No. 03AP-1276, 2005-Ohio-1959, ¶ 27.

{¶ 13} To determine whether Ohio has personal jurisdiction over a nonresident defendant, a court must engage in a two-step analysis. *Ed Map, Inc. v. Delta Career Edn. Corp.*, 10th Dist. No. 18AP-712, 2020-Ohio-358, ¶ 9; *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 183 (1994). First, the court must determine whether Ohio's long-arm statute and applicable Civil Rule confer personal jurisdiction over the nonresident defendant. *Goldstein* at 235. Second, if the statute and rule confer jurisdiction, the court must determine whether exercising jurisdiction comports with the nonresident defendant's right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. *Goldstein* at 235.

{¶ 14} Ohio's long-arm statute, R.C. 2307.382, and the complementary Civil Rule, Civ.R. 4.3, authorize a court to exercise personal jurisdiction over a nonresident defendant, and provide for service of process to effectuate that jurisdiction, when the cause of action arises from the nonresident "[t]ransacting any business in this state." R.C. 2307.382(A)(1); Civ.R. 4.3(A)(1); *Goldstein* at 235. As the trial court found MBG was transacting business in Ohio pursuant to R.C. 2307.382(A)(1), and did not analyze any other subsection of R.C. 2307.382(A), we similarly confine our analysis. *See* R.C. 2307.382(A)(1) through (9). At the time plaintiff filed suit, R.C. 2307.382(C) admonished that "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."[2]

---

[2] The General Assembly amended R.C. 2307.382(C), effective April 7, 2021. The section now provides that, "[i]n addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Although no Ohio court has addressed the amendment to R.C. 2307.382(C), some federal courts have questioned whether Ohio's long-arm statute is now co-extensive with the requirements of due process. *Compare C.T. v. Red Roof Inns*, S.D. Ohio No. 2:19-CV-5384 (July 1, 2021) (citing current R.C. 2307.382(C) and stating that "Ohio's long-arm statute and the U.S. Constitution" are "now coextensive"), *with Premier Prop. Sales Ltd. v. Gospel Ministries Internatl., Inc.*, 539 F.Supp.3d 822, 828 (S.D.Ohio 2021) fn. 2 (stating that the recent amendment to R.C. 2307.382(C) did "not * * * collapse the long-arm statute's specific jurisdiction test into the Federal [Due Process] standard"). However, as the pertinent events in the present case occurred before the April 7, 2021 amendment, we need not address the effect of the amendment, and must analyze whether personal jurisdiction was appropriate under both the long-arm statute and the Due Process Clause. *See Goldstein* at 238, fn. 1 (holding, prior to the amendment to R.C. 2307.382(C), that Ohio's long-arm statute was not coterminous with due process); *Joffe v. Cable Tech, Inc.*, 163 Ohio App.3d 479, 2005-Ohio-4930, ¶ 11 (10th Dist.); *Maui Toys, Inc. v. Brown*, 7th Dist. No. 12 MA 172, 2014-Ohio-583, ¶ 57.

{¶ 15} The statute and the rule are "broadly worded" and permit jurisdiction over nonresident defendants "who are *transacting any* business in Ohio." (Emphasis sic.) *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75 (1990). "Transact" means " 'to prosecute negotiations; to carry on business; to have dealings.' " (Emphasis omitted.) *Id.* at 75, quoting *Black's Law Dictionary* 1341 (5 Ed.1979). Thus, "transact" encompasses both " 'the carrying on or prosecution of business negotiations,' " as well as " 'negotiations which have been either wholly or partly brought to a conclusion.' " (Emphasis omitted.) *Id.* at 75, quoting *Black's*. In *Kentucky Oaks Mall Co.*, the court concluded that a nonresident commercial lessee's conduct of "negotiat[ing] the lease by telephone contact to Ohio with an Ohio-based limited partnership," and executing and mailing the ten-year lease agreement to Ohio, constituted " 'transacting business' within [Ohio's] long-arm statute." *Id.* at 76. *See Barnabas Consulting Ltd. v. Riverside Health Sys., Inc.*, 10th Dist. No. 07AP-1014, 2008-Ohio-3287, ¶ 16 (stating that a nonresident defendant-corporation was transacting business in Ohio as it "initiated the parties' business relationship" by contacting the plaintiff "at [plaintiff's] Columbus office," the parties negotiated and agreed to a contract through phone and e-mail while plaintiff "was in Ohio," most of the work on the project occurred in Ohio, and the defendant remitted payments to plaintiff's Columbus office); *Diversa, Inc. v. Pennsylvania Substance Abuse Information Ctr.*, 11th Dist. No. 95-P-0028 (Mar. 29, 1996); *Mayfran Internatl., Inc. v. Eco-Modity, L.L.C.*, 8th Dist. No. 107959, 2019-Ohio-4350, ¶ 15.

{¶ 16} Viewing the evidence in a light most favorable to plaintiff, MBG initiated the parties' negotiations by telephone contact with plaintiff at his home in Ohio, and MBG called plaintiff again to discuss the vehicle and the sale price. MBG mailed the contract to plaintiff in Ohio, plaintiff executed the contract in Ohio, and wired money to MBG from his bank in Ohio. Plaintiff's claims concern MBG's statements indicating that they could and would sell the E450 automobile to plaintiff and the contract for the sale of the vehicle. Accordingly, MBG was transacting business in Ohio, as it initiated, negotiated, and entered into a contract with plaintiff in Ohio, and plaintiff's claims arise from MBG's transaction of business in Ohio. The trial court properly found R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) satisfied.

{¶ 17} We turn next to the second prong of the two-step analysis and assess whether Ohio's exercise of jurisdiction over MBG would comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The "canonical decision" in this area remains *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, ___ U.S. ___, 141 S.Ct. 1017, 1024 (2021). In *Internatl. Shoe Co.*, the court held that "due process requires only that in order to subject a defendant to a judgment *in personam*, * * * [the defendant] have certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Internatl. Shoe Co.* at 316, quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985), quoting *Internatl. Shoe Co.* at 319.

{¶ 18} The focus on a defendant's " 'relationship to the forum State,' " has led to the recognition of two kinds of personal jurisdiction: "general (sometimes called all purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co.* at 1024, quoting *Bristol-Myers Squibb Co. v. Superior Court*, ___ U.S. ___, 137 S.Ct. 1773, 1779 (2017). General jurisdiction results from a defendant's "continuous and systemic" contacts with a forum unrelated to the underlying action. *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414-15 (1984). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

{¶ 19} Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.' " *Ford Motor Co.* at 1024, quoting *Burger King Corp.* at 475. While general jurisdiction "extends to 'any and all claims' brought against a defendant," for a court to exercise specific jurisdiction over a nonresident defendant, the plaintiff's claims must " 'arise out of or relate to the defendant's contacts'

with the forum." *Id.* at 1024-25, quoting *Goodyear* at 919 and *Bristol-Myers*. *Accord Parshall v. PAID, Inc.*, 10th Dist. No. 07AP-1019, 2008-Ohio-3171, ¶ 23.

{¶ 20} Plaintiff noted in the complaint that MBG "conduct[ed] business nationwide through advertising through the internet and other means including * * * throughout central Ohio." (Compl. at ¶ 2.) However, plaintiff did not present evidence indicating that MBG had engaged in negotiations with, or sold a single car to, any Ohio resident besides plaintiff. The record fails to demonstrate that MBG had such "continuous and systemic" contacts with Ohio that MBG could fairly be considered "at home" in this state. *Helicopteros Nacionales* at 414-15; *Goodyear* at 924. Accordingly, we assess whether Ohio could exercise specific jurisdiction over MBG in the present case.

{¶ 21} A forum may exercise specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." (Citations omitted.) *Burger King Corp.* at 472. The "constitutional touchstone" for personal jurisdiction is whether the defendant purposefully established minimum contacts with the forum State, such that the defendant " 'should reasonably anticipate being haled into court there.' " *Burger King Corp.* at 474, quoting *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980). *See World-Wide Volkswagon* at 292 (stating that the concept of minimum contacts protects nonresident defendants "against the burdens of litigating in a distant or inconvenient forum," and ensures that the States do not "reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system").

{¶ 22} A defendant need not be physically present in a forum to establish sufficient minimum contacts with the forum. While "territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines." *Burger King Corp.* at 476. Accordingly, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [courts] have consistently rejected the notion

that an absence of physical contacts can defeat personal jurisdiction there." *Id*. at 476, citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984).

{¶ 23} This court, and the Supreme Court of Ohio, have applied the three-part test adopted in *S. Machine Co., Inc. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir.1968), to assess whether a forum State's exercise of personal jurisdiction over a defendant comports with due process. *See Kauffman Racing*, 2010-Ohio-2551, at ¶ 50; *Shoptaw v. I & A Auto Sales, Inc.*, 10th Dist. No. 12AP-453, 2012-Ohio-6259, ¶ 8; *Peterson v. Butikofer*, 10th Dist. No. 18AP-364, 2019-Ohio-2456, ¶ 24; *Cavallaro*, 2011-Ohio-6670, at ¶ 10. The *S. Machine Co.* test provides the following three criteria: (1) the defendant must purposefully avail themselves of the privilege of acting in the forum State or causing a consequence in the forum State; (2) the cause of action must arise from the defendant's activities there; and (3) the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum State to make the exercise of jurisdiction reasonable. *S. Machine Co.* at 381. *See In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir.1972) (stating that the *S. Machine Co.* test "simply applies in a specific fashion the broad rule requiring substantial minimum contacts as a basis for jurisdiction").

{¶ 24} Regarding the first criteria, courts must find that the nonresident defendant " 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Goodyear* at 924, quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). To purposefully avail itself of the privilege of acting in the forum, the nonresident defendant must have " 'deliberately' * * * engaged in significant activities within a State," such that the defendant's own actions create a " 'substantial connection' with the forum State" or create " 'continuing obligations' between himself and residents of the forum." (Citations omitted.) *Burger King Corp.* at 475-76. The " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," or the " 'unilateral activity of another party or a third person.' " *Id.* at 475, quoting *Keeton* at 774; *World-Wide Volkswagen* at 299; *Helicopteros Nacionales* at 417. *Compare World-Wide Volkswagon* at 287, 297 (holding that an Oklahoma court could not exercise personal

jurisdiction "over a nonresident automobile retailer and its wholesale distributor in a products-liability action, when the defendants' only connection with Oklahoma [was] the fact that an automobile sold in New York to New York residents became involved in an automobile accident in Oklahoma"); *with Burger King Corp.* at 480 (holding that Florida could exercise jurisdiction over a Michigan franchisee in the franchisor's breach of contract action, as the franchisor was headquartered in Florida and the parties' agreement "envisioned continuing and wide-reaching contacts with [franchisor] in Florida").

{¶ 25} While "an individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts in the other party's home forum," additional factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing * * * must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." (Emphasis sic.) *Burger King Corp.* at 478-79. *See Barnabas Consulting*, 2008-Ohio-3287, at ¶ 19 (finding the fact that the nonresident defendant-corporation "initiated the parties' business relationship by telephoning [plaintiff] in Ohio," and the fact that the parties negotiated and agreed to the services contract while the plaintiff was in Ohio, were "relevant to whether [defendant] purposefully availed itself of the privilege of acting in Ohio"); *Columbus Show Case Co. v. Cee Contracting, Inc.*, 75 Ohio App.3d 559, 566 (10th Dist.1992) (finding "the fact that [defendant] initially approached [plaintiff], as opposed to [plaintiff] approaching [defendant], [was] significant in determining the most appropriate forum").

{¶ 26} The trial court relied on *Cavallaro* to support its conclusion that MBG had insufficient minimum contacts with Ohio. In *Cavallaro*, the plaintiff, an Ohio corporation, published items for sale in a catalog. The nonresident defendant telephoned the plaintiff and expressed interest in one of the items in the catalog, a chandelier. The parties negotiated the purchase of the chandelier over the phone and the nonresident defendant mailed a check to the plaintiff for a portion of the purchase price. The plaintiff filed suit against the defendant in Ohio, alleging the defendant failed to pay the balance of the purchase price. The court noted that "[s]everal federal courts have declined to find that a defendant's mere purchase of goods from another state creates minimum contacts with that

state for purposes of personal jurisdiction." *Cavallaro*, 2011-Ohio-6670, at ¶ 16. The court concluded that the defendant-buyer in *Cavallaro* lacked sufficient minimum contacts with Ohio to satisfy due process, as the parties' contract was "for a single consumer purchase" which "did not impose ongoing obligations to be performed in Ohio," the parties' "telephone and mail correspondence" were insufficient on their own to "provide the requisite minimum contacts," and neither the defendant-buyer's "contract with an Ohio corporation nor * * * making of payments to an Ohio corporation establish[ed] the requisite minimum contacts for the exercise of jurisdiction by the Ohio courts." *Id*. at ¶ 19, 21.

{¶ 27} Like *Cavallaro*, the transaction in the present case was a single consumer transaction and the parties' negotiations and execution of the contract occurred through telephone and mail correspondence. However, in *Cavallaro* the nonresident defendant was the purchaser, while here the nonresident defendant is the seller. *Cavallaro* acknowledged that courts have "distinguished situations where the nonresident defendant [was] a buyer, as opposed to a seller." *Id*. at ¶ 16.

{¶ 28} In *In-Flight Devices Corp*., the court noted that federal courts "frequently have distinguished between buyer and seller," with personal jurisdiction "more often" being "assumed over non-resident sellers than over non-resident buyers." *Id*. at 232. The court observed that the seller "often initiates the deal, tends to set many, if not all of the terms on which it will sell, and, of course, bears the burden of producing the goods or services"; while the buyer is typically a "relatively passive party, simply placing an order, accepting the seller's price and terms as stated in his product advertising and agreeing only to pay a sum upon receipt of the goods or services." *Id*. at 233. Thus, the court explained that the "buyer/seller distinction" has value to the "extent it is used as a short-hand means of expressing the differences between passive and active involvement in a transaction." *Id*. *See id*. (explaining that, in a case where the buyer takes an active role, and "vigorously negotiates, perhaps dictates, contract terms, inspects production facilities and otherwise departs from the passive buyer role," long-arm jurisdiction over the nonresident buyer would comport with due process). *See also Aaron Ferer & Sons Co. v. Diversified Metals Corp*., 564 F.2d 1211, 1214 (8th Cir.1977), quoting *Hanson*, 357 U.S. at 253 (stating that, while "solicitation by a nonresident purchaser for delivery outside the forum state is a more

minimal contact than that of a seller soliciting the right to ship goods into the forum state," the "ultimate test is whether the defendant, either as seller or buyer, has performed 'some act by which [it has] purposefully [availed] itself of the privilege of conducting activities within the forum state' "); *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1059 (11th Cir.1986) (observing that a "nonresident purchaser might be considered to have less contact with the forum state than a nonresident seller"); *McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F.Supp. 902, 908 (D.Minn.1971) (stating that when a nonresident defendant "takes the initiative or is the aggressor and goes into another state to transact business or to sell his wares," long-arm jurisdiction over the seller is appropriate); *Precision Constr. Co. v. J.A. Slattery Co., Inc.*, 765 F.2d 114, 118 (8th Cir.1985).

{¶ 29} Thus, when a nonresident seller actively seeks to sell goods in the forum State, the seller may create sufficient minimum contacts with the forum. For instance, in *Cincinnati Art Galleries v. Fatzie*, 70 Ohio App.3d 696 (1st Dist.1990), the court concluded that Ohio had jurisdiction over a nonresident defendant-seller. The defendant saw an advertisement in a trade magazine indicating the plaintiff, an Ohio art gallery, would like to purchase works by various artists. The defendant "telephoned the plaintiff and offered to sell it an original watercolor painting by F.S. Cozzens, one of the artists specified in the advertisement." *Id.* at 697. The parties entered into an agreement for the sale of the painting, and the plaintiff forwarded the purchase price of $7,500 to the defendant. *Id.* Upon receipt of the painting, the plaintiff discovered that the "piece was not a watercolor but rather was an inexpensive print or copy." *Id.* at 698. The defendant's office refused to accept delivery of the painting when the plaintiff attempted to return it. On such fact, the court concluded that the defendant had purposefully availed itself of the privilege of doing business in Ohio. *Id.* at 700. The court noted that it was defendant who "telephoned the plaintiff and offered to sell it a watercolor painting," the parties "contracted for the sale of the artwork," and the defendant then "deliberately frustrated the plaintiff's attempts to return the artwork and to exercise its right to rescind the transaction." *Id.* at 699.

{¶ 30} In contrast, when a nonresident seller plays only a passive role in the transaction, the seller will likely have insufficient contacts with the buyer's state of

residence. In *Malone v. Berry*, 174 Ohio App.3d 122, 2007-Ohio-6501 (10th Dist.), the plaintiff, an Ohio resident, was the successful high bidder on a car the nonresident defendant posted for sale on an Internet auction website. The plaintiff paid the purchase price and paid to have the car shipped from Alabama to Ohio. This court observed that, when a seller utilizes an Internet auction website the " 'choice of the [buyer] is beyond the seller's control' and * * * the 'defendant's sales in the forum [are] the result of random and attenuated contacts.' " *Id.* at ¶ 20, quoting *Metcalf v. Lawson*, 148 N.H. 35, 39 (N.H.2002). Accordingly, we held that the nonresident seller in *Malone* had insufficient minimum contacts with Ohio to support the exercise of personal jurisdiction. *Id.* at ¶ 22. *Accord Shoptaw*, 2012-Ohio-6259, at ¶ 12 (following *Malone* and finding that Ohio lacked personal jurisdiction over a nonresident seller who sold a car to the Ohio plaintiff through the auction website www.eBay.com).

{¶ 31} In *Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc.*, 943 F.Supp. 825 (N.D.Ohio 1996), the plaintiff, an Ohio resident, initiated the transaction by "telephon[ing] defendant," a resident of Arizona, "to inquire about the Ferrari" plaintiff saw advertised for sale in a national publication specializing in new and pre-owned vehicles. *Id.* at 827. Through telephone communications, the parties discussed the condition of the vehicle and negotiated the sale price. After the plaintiff paid the purchase price electronically, the defendant delivered the vehicle to Ohio. *Id.* The court found the defendant's contacts with Ohio "not 'substantial or significant' " enough "such that defendant would 'reasonably' expect to be haled into an Ohio court." *Id.* at 831. The court noted that, before entering into the contract with the Ohio plaintiff, the defendant's "contact with Ohio amounted to use of national advertising, the telephone, and other 'secondary or ancillary' lines of communication," which could not " 'alone provide the minimum contacts required by due process.' " *Id.*, quoting *Reynolds v. Internatl. Amateur Athletic Fedn.*, 23 F.3d 1110, 1119 (6th Cir.1994). The court further noted that the parties' contract had a choice of law provision specifying that the contract would be governed by the laws of the State of Arizona, a fact which " '[did] not help' plaintiff in demonstrating that defendant availed itself of the benefits and protections of Ohio law." *Id.* at 831, fn. 5, quoting *LAK, Inc. v. Deer Creek Ents.*, 885 F.3d 1293, 1295 (6th Cir.1989). *See also Burger King Corp.*

at 482 (stating that, while a choice of law provision in a contract "standing alone would be insufficient to confer jurisdiction," such a provision, in combination with other factors, could "reinforce[] [the defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there").

{¶ 32} Unlike the defendants in *Malone* and *Highway Auto Sales*, MBG did not simply post the E450 automobile for sale on an Internet auction website or in a trade magazine and wait for the successful high bidder or interested purchaser to contact them. Rather, after receiving some indication that plaintiff may be interested in the vehicle, MBG actively sought to sell the vehicle to plaintiff in Ohio through telephone and mail contacts. Although the " 'use of interstate facilities such as the telephone and the mail [are] a "secondary or ancillary" factor and "cannot alone provide the 'minimum contacts' required by due process," ' " the use such of facilities may be a "factor supporting the exercise of jurisdiction." *Barnabas Consulting*, 2008-Ohio-3287, at ¶ 20, quoting *Joffe v. Cable Tech, Inc.*, 163 Ohio App.3d 479, 2005-Ohio-4930, ¶ 33 (10th Dist.), quoting *LAK, Inc.* at 1301. Moreover, "[i]t is the 'quality' of such contacts, 'not their number or their status * * *' that determines whether they constitute purposeful availment." *Reynolds* at 1119, quoting *LAK, Inc.* at 1301, quoting *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir.1985).

{¶ 33} Although the present case concerns a single consumer transaction, in *Burger King Corp.* the court observed that "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King Corp.* at 475, fn. 18, quoting *McGee v. Internatl. Life Ins. Co.*, 335 U.S. 220, 223 (1957). *Compare Ricker v. Bobcat of Orlando, Inc.*, 10th Dist. No. 04AP-481, 2004-Ohio-6070, ¶ 17 (stating that, generally, a " 'one-shot deal' or a single, isolated act" are "insufficient, alone, to establish sufficient minimum contacts"), *with Fallang* 40 Ohio St.3d at 108 (holding that the defendant's "mailing of a single letter to Ohio" supported the exercise of personal jurisdiction over the defendant, because a "single purposeful contact is enough to satisfy the requirements of due process").

{¶ 34} The trial court found it "important" that plaintiff's daughter informed MBG of plaintiff's interest in the car and provided MBG with plaintiff's contact information. (Decision at 7-8.) The court determined such facts established it was plaintiff's daughter,

rather than MBG, who initiated the transaction. We disagree. The role of plaintiff's daughter in the present case is akin to the art gallery's advertisement in *Cincinnati Art Galleries*. While plaintiff's daughter, and the advertisement, provided the defendant-seller with information that a particular individual was interested in buying a product, the defendant-seller still had to initiate the transaction by contacting the plaintiff-buyer. Indeed, following its conversation with plaintiff's daughter, MBG could have done nothing, attempted to sell the car directly to the daughter, or encouraged the daughter to have her father travel to Texas to purchase the vehicle. *See World-Wide Volkswagon*, 444 U.S. at 297 (stating that if a defendant finds litigation in a distant forum too burdensome, it may "alleviate the risk" by "procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State"); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1126-27 (W.D.Pa.1997) (stating that if the nonresident defendant did not want "to be amenable to jurisdiction in Pennsylvania, the solution would have been simple—it could have chosen not to sell its services to Pennsylvania residents").

{¶ 35} Instead, MBG made the choice to reach out beyond Texas, and purposely and deliberately made contact with plaintiff in Ohio in order to sell the car directly to plaintiff. As such, MBG's contacts with Ohio were not random or fortuitous. *See Ford Motor Co.*, 141 S.Ct. at 1025, quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (stating that the defendant's contacts with the forum State "must be the defendant's own choice," and the contacts must show "that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there"). Plaintiff's affidavit details how MBG agents repeatedly contacted him at his home in Ohio to negotiate and finalize the sale of the vehicle. MBG then mailed the contract to plaintiff in Ohio and plaintiff wired the purchase price from his bank in Ohio to Texas. While the fact of telephone and mail correspondence cannot alone establish sufficient minimum contacts to support jurisdiction, the quality of the contacts in the present case, coupled with the fact that MBG initiated the transaction for its own financial gain, demonstrate that MBG purposefully availed itself of the privilege of doing business in Ohio. As MBG chose to initiate, negotiate, and finalize a sale with an individual in Ohio, MBG's own choices created a substantial connection with Ohio, albeit for a single

transaction. MBG's conduct and contacts with Ohio in the present case were such that MBG could have reasonably anticipated being haled into court in Ohio as a result of the transaction.

{¶ 36} Thus, viewing the evidence in a light most favorable to plaintiff, plaintiff made a prima facie showing that MBG purposely availed itself of the privilege of doing business in Ohio. As such, plaintiff satisfied the first prong of the *S. Machine Co.* test.

{¶ 37} The second prong of the *S. Machine Co.* test addresses whether the plaintiff's claims arise from MBG's contacts with Ohio. " 'If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts.' " *Kauffman Racing Equip.* at ¶ 70, quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996). The cause of action need not " 'formally "arise from" defendant's contacts with the forum; rather, this criterion requires only "that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." ' " *Id.*, quoting *Third Natl. Bank v. Wedge Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir.1989), quoting *S. Machine Co.* at 384, fn. 27. *See In-Flight Devices Corp.* at 229 (finding the second prong of the *S. Machine Co.* test satisfied as the defendants' transaction of business in Ohio, "[their] entering of a contractual relationship with an Ohio corporation – [was] necessarily the very soil from which the action for breach grew"); *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998).

{¶ 38} Plaintiff's claims of breach of contract and violation of the Ohio Consumer Sales Practices Act both alleged that MBG failed to perform the contract for the sale of the E450. As MBG was transacting business in Ohio by negotiating and executing a contract with an Ohio resident, plaintiff's causes of action pertaining to the breach of that contract naturally arise from MBG's activities in Ohio. Plaintiff's claim of negligent and/or intentional misrepresentation and fraud alleges that MBG falsely represented it had the E450 available for sale and that it would sell the vehicle to plaintiff. This claim also arises from MBG's contacts with Ohio, as MBG made the alleged representations during its negotiations with plaintiff in Ohio. Accordingly, plaintiff satisfied the second prong of the *S. Machine Co.* test.

**{¶ 39}** The third prong of the *S. Machine Co.* test addresses whether the forum's exercise of jurisdiction over the defendant is reasonable. "When 'the first two elements of [the *S. Machine Co.* test are satisfied] then an inference arises that this third factor is also present.' " *Kauffman Racing Equip.* at ¶ 71, quoting *CompuServe, Inc.* at 1268. " ' "[O]nly the unusual case will not meet this third criterion." ' " *Id.*, quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir.1988), quoting *First Natl. Bank of Louisville v. J. W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir.1982). *Accord Cole* at 436.

**{¶ 40}** In reviewing the reasonableness of exercising jurisdiction over a nonresident defendant, courts may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagon* at 292. These considerations may serve "to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King Corp.* at 477.

**{¶ 41}** "[I]t is beyond dispute that [a forum State] has a significant interest in redressing injuries that actually occur within the State." *Keeton*, 465 U.S. at 776. Moreover, Ohio " 'has a substantial interest in seeing that its residents get the benefit of their bargains.' " *Kentucky Oaks Mall Co.* at 78, quoting *Wright Internatl. Express, Inc. v. Roger Dean Chevrolet, Inc.*, 689 F.Supp. 788, 791 (S.D.Ohio 1988). *Accord Cincinnati Art Galleries* at 700 (stating that "Ohio embraces a policy which seeks to secure to its businessmen the benefit of their bargains"). In the present case, accepting plaintiff's averments and allegations as true, MBG initiated and entered into a contract to sell a car to an Ohio resident, accepted payment for the vehicle, then refused to produce the vehicle. Accordingly, Ohio has an interest in adjudicating the present dispute and plaintiff has an interest in obtaining relief in this state.

**{¶ 42}** Furthermore, we do not find the burden on MBG of litigating in Ohio to be unduly onerous. Although MBG's witnesses are likely to be located in Texas, " 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.' " *Burger King Corp.* at

474, quoting *McGee,* 355 U.S. at 223. As such, it usually "will not be unfair to subject [a defendant] to the burdens of litigating in another forum for disputes relating to such activity." *Id*., citing *McGee.* Additionally, the discovery procedures provided for in the Ohio Rules of Civil Procedure may permit the parties to gather and present evidence in such a way as to limit, if not eliminate, the need for the Texas witnesses to travel to Ohio. *See Barnabas Consulting*, 2008-Ohio-3287, at ¶ 26.

{¶ 43} Balancing the considerations identified in *World-Wide Volkswagon*, we conclude that Ohio's exercise of jurisdiction over MBG in the present case would be reasonable. As such, we find the third prong of the *S. Machine Co.* test satisfied.

{¶ 44} Thus, viewing the evidence in a light most favorable to plaintiff, we conclude plaintiff produced sufficient evidence to allow reasonable minds to find Ohio's long-arm statute and applicable Civil Rule confer jurisdiction over MBG, and that the trial court's exercise of jurisdiction over MBG would not deprive this nonresident defendant of its right to due process of law under the Fourteenth Amendment to the United States Constitution. As plaintiff established a prima facie case that the trial court had personal jurisdiction over MBG, the court erred by dismissing the case without first holding an evidentiary hearing. *See Benjamin*, 2005-Ohio-1959, at ¶ 27.

{¶ 45} Regarding the remaining two defendants, plaintiff asserts only that his arguments "as to personal jurisdiction over [MBG] also apply to the issues involving Group 1 * * * and Sterling McCall Group." (Appellant's brief at 31.) The trial court concluded that, as it lacked "personal jurisdiction for MBG under the Due Process Clause," it could not "have personal jurisdiction over [Group 1] or [Sterling McCall]." (Decision at 9-10.) The court also noted that its analysis under the Due Process Clause for Group 1 and Sterling McCall "would mirror that of [the court's] MBG analysis." (Decision at 10.)

{¶ 46} Thus, the trial court based its conclusion that it lacked personal jurisdiction over Group 1 and Sterling McCall on its prior conclusion that it lacked personal jurisdiction over MBG. As we have found the trial court erred by concluding that it lacked personal

jurisdiction over MBG, the trial court on remand must reassess whether it also lacks personal jurisdiction over Group 1 and Sterling McCall.[3]

## IV. Conclusion

{¶ 47} Based on the foregoing, we sustain plaintiff's sole assignment of error. Having sustained plaintiff's assignment of error, the judgment of the Franklin County Court of Common Pleas is reversed and this case is remanded to that court for further proceedings consistent with law and this decision.

*Judgment reversed, cause remanded*
*with instructions.*

KLATT and MENTEL, JJ., concur.

———————————

[3] *See Olympic Holding Co., L.L.C. v. Ace Ltd.*, 10th Dist. No. 07AP-168, 2007-Ohio-6643, ¶ 89, 82, *overruled on other grounds* by *Olympic Holding Co., L.L.C. v. Ace Ltd.*, 122 Ohio St.3d 89, 2009-Ohio-2057 (holding that a parent corporation's "mere stock ownership" of a subsidiary is "insufficient to establish personal jurisdiction" over the parent corporation, and discussing "the factors courts consider in deciding whether to impute the subsidiary's contacts with Ohio to the foreign parent company for purposes of personal jurisdiction"); *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir.2008), quoting *Danton v. Innovative Gaming Corp.*, 246 F.Supp.2d 64, 72 (D.Me.2003).